IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID MEARS,                        §
                Plaintiff,          §
                                    §
v.                                  §        CIVIL ACTION NO. H-12-2379
                                    §
FIRST STREET HOSPITAL, LP,          §
                Defendant.          §

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary
Judgment ("Motion") [Doc. # 20] filed by Defendant First Street Hospital, LP ("First
Street"), to which Plaintiff David Mears filed a Response [Doc. # 22], and Defendant
filed a Reply [Doc. # 24].[1]  Having reviewed the full record and applied governing
legal authorities, the Court **grants** the Motion.

## I.     BACKGROUND

On January 5, 2011, Plaintiff, an African-American male, applied for a Medical
Technologist position with First Street.  On January 7, 2011, Janet Londono, a non-
African-American female, applied for a Medical Technologist position with First
Street.  Veronica Schievelbein (First Street's Lab Manager) hired Plaintiff for a

---

[1]      Also pending is Defendant's Motion for Partial Judgment on the Pleadings [Doc.
# 19], to which Plaintiff filed a Response [Doc. # 21], and Defendant filed a Reply
[Doc. # 23].  Because Defendant is entitled to summary judgment, the Motion for
Partial Judgment on the Pleadings is **denied as moot**.

"PRN" position in which he was assigned to work as needed.  Londono was hired for a full-time position.

Plaintiff's first day working at First Street was January 10, 2011.  On February 16, 2011, Plaintiff complained about labeling procedures used by Gulf Coast Regional Blood Center ("Gulf Coast").  Plaintiff complained specifically that Gulf Coast did not place a label on the front and on the back of the sample.  Plaintiff stated that the solution was for Schievelbein to call Gulf Coast to have them label samples on both the front and the back.

On February 21, 2011, Plaintiff complained that a co-worker told him to smile more.  Plaintiff complained that the comment, made on two occasions, was disrespectful and hostile.  Plaintiff proposed that the co-worker not speak to him except on lab business.

On March 1, 2011, Plaintiff again complained about the drivers employed by Gulf Coast.  Plaintiff demanded that Gulf Coast change its method of labeling blood-work containers, again insisting that the blood-work samples contain two labels rather than just one.  Plaintiff also advised that he directed a driver to return to First Street because the driver failed to "sign-out" one unit of blood "despite [Plaintiff's] instructions to her to do so."  Plaintiff demanded that the drivers "sign out" units when the blood sample containers were picked up from First Street.

On March 7, 2011, Plaintiff again complained about the labeling method used by Gulf Coast and the drivers' refusal to sign a log-book at Plaintiff's request. Plaintiff had contacted Gulf Coast directly and was told that Gulf Coast declined to sign the log-book. Nonetheless, Plaintiff stated that he would continue to require each driver to sign a log-book. Plaintiff directed the Gulf Coast representative to talk with Plaintiff's supervisor. On March 8, 2011, Plaintiff again sent an email to his supervisor, Schievelbein, stating in part that nursing priorities and lab priorities were different and "this is exactly why a nurse should not write policies and procedures for a hospital lab." *See* March 8 Email, Exh. 4 to Motion.

On March 11, 2011, Plaintiff complained that the receptionist at the front desk/admission/registration area was uncooperative when he wanted to leave the door open using a "door stop." Plaintiff then instructed Schievelbein to discuss the matter with the receptionist's supervisor.

On March 14, 2011, Plaintiff complained again about the labeling issue. Plaintiff had contacted Gulf Coast directly to complain about the failure to use two labels, and he alleged that the Gulf Coast employee called him a "son-of-a-bitch." Plaintiff called the employee's supervisor directly and complained.

Also on March 14, 2011, Plaintiff complained that the receptionist told him more than once that a patient was waiting. Plaintiff believed this indicated that the

receptionist did not respect him adequately.

On March 15, 2011, Plaintiff complained that he was not being paid a shift differential for all hours he worked, and he requested a meeting to discuss the pay issue. *See* March 15 Email, Exh. 4 to Motion. On March 16, 2011, Plaintiff met with Amber Guillotte (First Street's Human Resources Manager) and Janell Wong (First Street's Human Resources Generalist). Plaintiff alleges that he complained about the shift differential policy and complained also about sex and race discrimination in connection with the hiring of Londono on a full-time basis. Defendant has presented evidence that Plaintiff complained only that he was not being paid a shift differential for all hours he worked and made no mention of sex or race discrimination. Defendant has presented evidence that Plaintiff was rude, insubordinate, and unprofessional during the meeting.

On March 17, 2011, Sharon McDonough (First Street's Chief Executive Officer) terminated Plaintiff's employment, noting that there had been several complaints about Plaintiff during the nine weeks he had been employed at the hospital. McDonough allegedly told Plaintiff also that he was not "working out" at First Street. Cheryl Gernas, Chief Nursing Officer, was present at the meeting during which Plaintiff's employment was terminated.

Plaintiff filed a Charge of Discrimination with the Equal Employment

Opportunity Commission and received a Dismissal and Notice of Right to Sue. Plaintiff filed this lawsuit on January 19, 2012, alleging that Defendant discriminated against him on the basis of his sex (male) and his race (African-American) in violation of Title VII and on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA").  Plaintiff alleged also that Defendant retaliated against him in violation of Title VII. In his Response to the Motion, Plaintiff withdrew his ADEA claim.   After discovery was complete, Defendant moved for summary judgment.  The Motion has been fully briefed and is now ripe for decision.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex,*

477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

      For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

      If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

      In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most

favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the

nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud."  (citation omitted)).

## III.   SEX AND RACE DISCRIMINATION CLAIM

Plaintiff alleges that the decision not to select him for a full-time position at First Street, and instead to select Londono for that position, was the result of sex and race discrimination.

### A.   *Prima Facie* Case

To avoid summary judgment on his claim that he was not promoted to a full-time position because of sex or race discrimination, Plaintiff must first establish a *prima facie* case by showing that (1) he was not selected for the more favorable

position, (2) he was qualified for the position he sought, (3) he was within a protected class at the time of the failure to promote, and (4) the defendant either promoted someone outside of that protected class or otherwise failed to promote the plaintiff because of his sex and/or race.  *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

It is undisputed that Plaintiff was not selected for the full-time position, that he was within a protected class (African-American male) at the time, and someone outside of that protected class (non-African-American female) was selected for the full-time position.

There exists a dispute regarding whether Plaintiff was qualified for the full-time position.  Defendant has presented evidence that Plaintiff did not satisfy the requirement that he be fluent in Spanish.  Plaintiff has presented evidence that fluency in Spanish was not a requirement for the position.  Plaintiff's evidence raises a genuine issue of material fact regarding his qualification for the full-time position and, for purposes of the pending Motion, the Court assumes that Plaintiff can establish a *prima facie* case of race and sex discrimination.

### B.    Defendant's Explanation for Employment Decision

When a plaintiff establishes a *prima facie* case, he thereby "raises an inference

of unlawful discrimination, which shifts the burden of production to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff." *Id.* at 347.  Defendant has presented evidence that Plaintiff was not hired for the full-time position because he was seeking only part-time work and because Londono was fluent in Spanish.

### C.   <u>Pretext</u>

Where, as here, Defendant satisfies its burden of production, the burden shifts back to Plaintiff to prove that Defendant's stated reason is merely a pretext for sex and/or race discrimination. *Id.* (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).  Plaintiff may satisfy this burden by showing that Defendant's proffered reason for its decision was false, or by demonstrating that he was clearly better qualified than the person selected for the full-time position. *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

Plaintiff has failed to present evidence that the proffered reasons were false. Plaintiff states in his affidavit that he was seeking full-time employment, but Schievelbein has stated under oath that she understood that Plaintiff was working other jobs at the time and sought only part-time work.  Schievelbein's understanding is supported by Plaintiff's current resume.  Under the heading "1990 - 2013 Employment History," Plaintiff lists employment as a Medical Technologist with

Medical Relief Staffing between October 2006 and the present (2013), and lists employment as a Medical Technologist with Staff Search between June 1999 and the present (2013).  *See* Mears Resume, Exh. 1 to Reply.  Plaintiff states that the full-time First Street position did not require fluency in Spanish, but it is uncontroverted that Schievelbein viewed fluency in Spanish as a necessity.  *See* Declaration of Veronica Schievelbein, Exh. 6 to Motion.  It is undisputed that Plaintiff is not fluent in Spanish.

Plaintiff has failed to present evidence that raises a genuine issue of material fact that he was "clearly better qualified" than Londono.  Plaintiff and Londono had similar education, experience, and certifications.  *See* Plaintiff's Employment Application, Exh. 2 to Motion; Londono's Employment Application, Exh. 5 to Motion.  Both had Bachelor of Science degrees, and both were certified by the American Society for Clinical Pathology.  *See id.*  Plaintiff had worked longer as a Medical Technologist, but most of his recent experience was through a staffing agency.  Between February 2006 and January 2011 when he was hired by First Street, Plaintiff worked only for staffing agencies except for four months at North Cypress Medical Center between February 2010 and June 2010.  As of January 2011, Londono, on the other hand, had worked at Clear Lake Regional Medical Center for over four years.

It is undisputed, however, that Londono was fluent in Spanish and Plaintiff was

not.  *See id.*  The ability to speak and read Spanish fluently was considered an important skill, even if not a mandatory one, that Londono possessed and Plaintiff did not.  As a result, Plaintiff has failed to raise a genuine issue of material fact that he was "clearly better qualified" than Londono.

Plaintiff has failed to present evidence that raises a genuine issue of material fact that Defendant's expressed reason for hiring Londono rather than Plaintiff for the full-time position was a pretext for race or sex discrimination.  As a result, Defendant is entitled to summary judgment on Plaintiff's race and sex discrimination claim.

## IV.   RETALIATION CLAIM

Plaintiff alleges that he engaged in protected activity when he complained that the decision to hire Londono for the full-time position was based on race and/or sex discrimination.  Plaintiff alleges that his employment was terminated in retaliation for this protected activity.

### A.   *Prima Facie* Case

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must present evidence that (1) he engaged in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.  *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d

510, 523 (5th Cir. 2008)).

Plaintiff has presented evidence that he engaged in protected activity when he allegedly complained to Amber Guillotte (First Street's Human Resources Manager) and to Janell Wong (First Street's Human Resources Generalist) during a meeting on March 16, 2011, that Londono's selection for the full-time position constituted race and sex discrimination.[2]   It is undisputed that Plaintiff suffered an adverse employment action when his employment was terminated on March 17, 2011.

Defendant argues that Plaintiff has failed to present evidence of a causal connection between his alleged protected activity and the termination of his employment.  Plaintiff argues that the causal connection is established by the temporal proximity between his alleged complaints of discrimination and his discharge.  Even at the *prima facie* stage, however, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." *Thompson v. Somervell County, Texas*, 431 F. App'x 338, 342 (5th Cir. July 1, 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (discussing temporal proximity between an employer's knowledge of protected

---

[2]    Defendant disputes Plaintiff's allegation that he complained about sex and race discrimination at the March 16 meeting.  Defendant's evidence indicates that Plaintiff complained only that he was not being paid a shift differential.  Indeed, the email from Plaintiff requesting the meeting mentions only pay and shift differential issues. *See* March 15 Email, Exh. 4 to Motion.  Plaintiff's affidavit, however, is adequate to raise a genuine issue of material fact on this element of the *prima facie* case.

activity and an adverse employment action); *Cothran v. Potter*, 398 F. App'x 71, 73-74 (5th Cir. Oct. 18, 2010) ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim."); *Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. Jan. 30, 2007) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action."). Plaintiff "must present at least some evidence that the decision maker was aware of the protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003).

In this case, Plaintiff has presented no evidence that Sharon McDonough (First Street's Chief Executive Officer), the decision maker in connection with his termination, had any knowledge of alleged complaints by Plaintiff regarding race or sex discrimination. McDonough was not present at the March 16 meeting. Notes of the meeting prepared by the two First Street employees who were present do not reflect any complaints by Plaintiff regarding discrimination. Therefore, if McDonough had reviewed the notes, she would not have become aware of any alleged complaints of discrimination. Absent other evidence to establish a causal connection between his alleged protected activity and the decision to terminate his employment, the temporal proximity between the March 16 meeting and the March 17 termination

does not satisfy the requirement that Plaintiff show a causal connection between the protected activity and the adverse employment discrimination. As a result, Plaintiff has failed to establish a *prima facie* case, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

B. **Pretext**

Even if Plaintiff were able to establish a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-retaliatory reason for its decision. Defendant has stated and presented evidence that Plaintiff was a "part-time employee, but a full-time complainer" and that he was unable or unwilling to work with co-workers and Gulf Coast without conflict. During his nine weeks of employment at First Street, Plaintiff complained repeatedly about Gulf Coast procedures and about various co-workers.

Plaintiff has failed to present evidence that raises a genuine issue of material fact on the issue of pretext. Indeed, most of the issues identified by Defendant as a basis for the decision to terminate Plaintiff's employment are substantiated by emails written and sent by Plaintiff.

Regarding the Gulf Coast procedures, it is undisputed that Plaintiff sent an email on February 16, 2011, little more than one month after he began working at First Street, complaining about Gulf Coast's procedures for labeling blood samples.

The emails written by Plaintiff to Schievelbein support Defendant's stated reason for terminating Plaintiff's employment.  Plaintiff insisted on having two labels on blood samples, which was not required by First Street.  Plaintiff admits having a Gulf Coast driver return to the hospital to sign-out a unit of blood, when signing the log-book was not required by First Street.  Plaintiff's email communication with his supervisor could be reasonably perceived as inappropriate.  He admitted contacting Gulf Coast personnel directly, stated that he would continue to have each driver sign the log-book even though it was not a hospital policy, and implies in an unprofessional manner that nurses should not write policies and procedures for a hospital lab.

Defendant's explanation that it terminated Plaintiff's employment because he could not or would not work amicably with other hospital employees is similarly supported by emails written by Plaintiff.  On February 21, 2011, Plaintiff sent Schievelbein an email complaining that a co-worker on two occasions told him to smile.   Plaintiff described the comment as rude, abrasive, unprofessional, disrespectful, hostile, demeaning, and insulting.  Plaintiff then stated that he "would prefer" that the employee not communicate with him at all except regarding lab business.

On March 11, 2011, Plaintiff emailed Schievelbein complaining that the receptionist was uncooperative when he wanted to leave the door open using a "door

stop."  Plaintiff stated that Schievelbein should "feel free" to discuss the issue with the receptionist's supervisor.

On March 14, 2011, Plaintiff emailed Schievelbein to complain again about the receptionist.   Specifically, Plaintiff complained that the receptionist lacked "any professional respect" for him and told him more than once that a patient was waiting. Plaintiff stated that if the receptionist wanted to tell him how to do his job and when to do it, she should "acquire the training, education and skill necessary."

Janell Wong and Amber Guillotte both made detailed notes of the March 16, 2011 meeting with Plaintiff.  Wong noted that she had learned that Plaintiff routinely came to work an hour or more late.  *See* Wong Memo to File, Exh. 4 to Motion. Wong stated that during the meeting, Plaintiff interrupted and became loud and argumentative.  Wong stated that when Guillotte explained the pay differential policy, Plaintiff responded, "I don't work for free and I expect to be paid shift diff for all my hours worked."  *See id.*  Guillotte's notes of the meeting describe similar conduct by Plaintiff.  Guillotte stated that Plaintiff interrupted, got upset and loud, and insisted on telling Wong and Guillotte how things should be done at First Street.  *See* Guillotte's "Meeting with David Mears" Notes, Exh. 4 to Motion.  Guillotte described Plaintiff as "loud, aggressive and rude," as well as "completely disrespectful and insubordinate."  *See id.*  Guillotte noted that Plaintiff had been coming to work an

hour or more late every day for approximately one month "because he has some training at another job." *See id.*

The evidence in this record, primarily the emails written by Plaintiff, support Defendant's articulated reason for its decision to terminate Plaintiff's employment. Plaintiff has failed to present evidence that suggests the articulated reason is a pretext for retaliation and has presented no evidence that would support a finding that he would not have been discharged but for his protected activity.

In conclusion, Plaintiff has failed to establish a *prima facie* case of retaliation because he has presented no evidence that the decision-maker knew of his alleged protected activity. Additionally, even if Plaintiff were able to establish a *prima facie* case of retaliation, he has failed to present evidence that Defendant's reason for terminating his employment was a pretext for retaliation and that, but for his alleged protected activity, he would not have been discharged.  As a result, Defendant is entitled to summary judgment on

V.      **CONCLUSION AND ORDER**

Based on the foregoing, Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding whether First Street's explanation for terminating his employment was a pretext for sex discrimination, race discrimination, or retaliation.  Additionally, Plaintiff has failed to present evidence that the decision-

maker knew of his alleged protected activity.  Consequently, it is hereby

       **ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 20] is

**GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  It is further

       **ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings

[Doc. # 19] is **DENIED AS MOOT**.

       The Court will issue a separate Final Judgment.

       SIGNED at Houston, Texas, this **6<u>th</u>** day of **September, 2013**.

                            Nancy F. Atlas
                      United States District Judge